

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2008

# USA v. Venord

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2880

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Venord" (2008). *2008 Decisions.* Paper 1752.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1752

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-2880
_____

UNITED STATES OF AMERICA

v.

SEIDE VENORD,

*Appellant*

_____

On Appeal from the United States District Court
for the District of Eastern Pennsylvania
District Court No.: 05-cr-0226
District Judge: Honorable John R. Padova

_____

Submitted Under Third Circuit LAR 34.1(a)
January 8, 2008

Before: FISHER, HARDIMAN and ALDISERT, *Circuit Judges*.

(Filed: January 14, 2008)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Seide Venord appeals his judgment of conviction on forty-three counts of money laundering following a jury trial. "We construe the evidence in the light most favorable to the government, as the verdict winner." *United States v. Kemp*, 500 F.3d 257, 265 n.4 (3d Cir. 2007) (citation omitted).

Venord owned and operated a Philadelphia check-cashing business which was the target of a sting operation by the Bureau of Immigration and Customs Enforcement. Beginning in August 2003, a male informant using twenty different identification cards — five of which depicted photographs of women — purchased blank money orders with cash that he sometimes told Venord was "drug money." The informant wired some $150,000 in cash, exchanged nearly $118,000 for money orders, and paid almost $42,000 in fees to Venord, who was either present for, or participated in, all forty-three transactions for which he was convicted.

On appeal, Venord claims that the District Court erred when it instructed the jury that the trial was a "quest for truth" and defined reasonable doubt as an "honest doubt." Because Venord failed to object to the jury charge, we review for plain error, *see United States v. Milan*, 304 F.3d 273, 284 (3d Cir. 2002), which requires Venord to show: (1) an error; (2) which is clear or obvious; and (3) which affects substantial rights; and (4) which "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 733-34 (1993). "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has

been made in the trial court." *Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

Because the Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, "trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." *United States v. Hernandez*, 176 F.3d 719, 728 (3d Cir. 1999) (citation omitted). When a trial court defines the term "reasonable doubt," no particular words are required; instead, "[t]he law requires only that the concept be correctly conveyed to the jury when it is defined." *Id.* (citations and internal quotation marks omitted). When faced with a challenge to jury instructions, "we consider the totality of the instructions and not a particular sentence or paragraph in isolation. The issue is whether [. . .] the charge as a whole fairly and adequately submits the issues in the case to the jury." *United States v. Thayer*, 201 F.3d 214, 221 (3d Cir. 1999) (internal citations and quotation marks omitted).

When we apply the foregoing principles to Venord's case, it is clear that the District Court did not err. First, we note that twice the District Court properly defined guilt beyond a reasonable doubt. *See Appendix* at 606-08 and 630-32. Moreover, the District Court repeatedly stated that the Government bore the burden of proving Venord's guilt beyond a reasonable doubt. *See id.* at 615, 619, 621, 623-24. For these reasons, and because we have held that jury instructions defining "reasonable doubt" as "honest doubt"

are not erroneous, *see, e.g., United States v. Polan*, 970 F.3d 1280, 1286 (3d Cir. 1992),

we find no error in the District Court's use of the phrase "honest doubt."

Although the District Court defined the *trial* as "a quest for truth as to the facts," it

did not define "reasonable doubt" as the "quest for truth." Instead, the District Court was

merely explaining to the jury the purpose of trials. *See Smith v. Borough of Wilkinsburg,*

147 F.3d 272, 278 (3d Cir. 1998) ("[i]t is black letter law that it is the inescapable duty of

the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case,

and to guide, direct, and assist them toward an intelligent understanding of the legal and

factual issues involved *in their search for the truth.*") (citation, alterations, and internal

quotation marks omitted) (emphasis added). The District Court in no way equated — or

even connected — the Government's burden of proof with this quest. That being so, we

cannot see how this reference could have confused the jury about the Government's

burden of proof, particularly when the trial judge repeatedly reminded the jury of the

Government's burden and its parameters. *See Milan,* 304 F.3d 273, 285-86 (explaining

that a court's "single, isolated utterance of the phrase 'moral certainty'" in its discussion

of reasonable doubt did not require reversal where the jury instructions viewed as a whole

included the proper burden of proof and the meaning of reasonable doubt was explained

at length).

Read in context, the phrase "quest for truth" did not encourage jurors to convict

Venord based on their individual views of the truth. Thus, the instructions at issue here

are materially distinguishable from the improper charge given in *Hernandez. See* 176

F.3d at 729-31 (finding unconstitutional this instruction:  "[i]t's what you in your own heart and your own soul and your own spirit and your own judgment determine is proof beyond a reasonable doubt").

For the foregoing reasons, Venord's is not the "rare case" in which reversal is required.  Accordingly, we will affirm the judgment of the District Court.